*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0451p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

LIVONIA SHROPSHIRE, individually and as
next friend of HANNAH SHROPSHIRE,
                         *Plaintiff-Appellant,*

          *v.*

LAIDLAW TRANSIT, INC.,
                         *Defendant-Appellee.*

Nos. 07-1650/1749

———————————

Appeal from the United States District Court

for the Eastern District of Michigan at Detroit.

No. 06-10682—Anna Diggs Taylor, District Judge.

Argued:  October 29, 2008

Decided and Filed:  December 18, 2008

Before:  NORRIS, ROGERS, and KETHLEDGE, Circuit Judges.

———————————

## COUNSEL

**ARGUED:**  Larry Bennett, GIARMARCO, MULLINS & HORTON, Troy, Michigan, for Appellant.  Daniel S. Saylor, GARAN LUCOW MILLER, Detroit, Michigan, for Appellee.  **ON BRIEF:**  Larry Bennett, GIARMARCO, MULLINS & HORTON, Troy, Michigan, for Appellant.  Daniel S. Saylor, GARAN LUCOW MILLER, Detroit, Michigan, for Appellee.

---------------------

**OPINION**

---------------------

ALAN E. NORRIS, Circuit Judge.  In this personal injury action, Livonia Shropshire brought suit against defendant Laidlaw Transit, Inc., on behalf of her daughter, Hannah,[1] for injuries sustained in an automobile accident that occurred when she was five years old.  Because our jurisdiction is premised on diversity of citizenship, 28 U.S.C. § 1332, we apply state substantive law.  Michigan's no-fault automotive insurance scheme governs this case, and requires a plaintiff to show the existence of a "serious impairment of body [sic] function" to recover noneconomic damages.  The statute further provides that, for a plaintiff such as Hannah, who alleges she suffered a closed-head injury, whether she is seriously impaired is a question for the jury if a physician testifies under oath that the plaintiff "may have a serious neurological injury."  In the district court, plaintiffs sought to introduce an affidavit satisfying this provision, but the court ruled it inadmissible.  Without it, plaintiffs had no evidence that Hannah had suffered a serious impairment of body function, and the district court consequently granted summary judgment to defendant.  Plaintiff appealed, and we now affirm the decision of the district court, though upon different reasoning. [2]

**I.**

A brief overview of Michigan's no-fault insurance scheme, Mich. Comp. Laws § 500.3135 (2008), will allow for a better understanding of the relevance of the underlying facts.  Michigan has partially abolished tort liability for noneconomic damages arising out of automobile accidents.  Mich. Comp. Laws §§ 500.3135(1) & (3)(b).  Plaintiffs' recovery for such damages is limited to accidents in which they suffer

---

[1] She also asserted claims related to her own alleged injuries, which are not at issue in this appeal.

[2] Defendant filed a cross-appeal and asserts that the district court erred in its analysis of proximate cause.  Given our resolution of this case, we need not reach this issue.  We also note in passing that a cross-appeal is inappropriate when the only relief sought is an affirmance of the district court judgment.  *See generally Bailey v. Dart Container Corp.*, 292 F.3d 360, 1362 (Fed. Cir. 2002) ("It is only necessary and appropriate to file a cross-appeal when a party seeks to enlarge its own rights under the judgment.").

"death, serious impairment of body function, or permanent disfigurement." Mich. Comp. Laws § 500.3135(1). At issue in the appeal before us is the "serious impairment of body function" exception, defined in the statute:

> As used in this section, "serious impairment of body function" means an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life.

Mich. Comp. Laws § 500.3135(7).

The statute further instructs courts that "for a closed-head injury, a question of fact for the jury is created if a licensed allopathic or osteopathic physician who regularly diagnoses or treats closed-head injuries testifies under oath that there may be a serious neurological injury." Mich. Comp. Laws § 500.3135(2)(a)(ii). It is this provision specifically that plaintiff invokes to avoid summary judgment and bring her case before a jury.

## II.

On May 15, 2001, Hannah's mother Livonia picked her up at school, along with her two sisters and her brother. Hannah was five years old at that time, nearing the end of kindergarten. Livonia drove a van with three rows of seats and Hannah, wearing a seatbelt, sat in the row immediately behind her mother. After picking up the children Livonia headed towards the parking lot exit, driving alongside a row of school buses parked to her right. As she did so, a bus owned by defendant Laidlaw pulled away from the curb and struck the right rear passenger side of the van.

The accident caused Hannah to hit her head against the van's window. Livonia, unaware of this, quickly stopped the van and checked on her children, each of whom said he or she was okay, a message Livonia conveyed to the police when they arrived on the scene. It is undisputed that Hannah's mother did not seek medical treatment for her the day of the accident, and Hannah never showed any physical signs of an injury from the accident.

Within a few days, however, Hannah began to experience headaches, and when, a week after the accident, she also developed a fever and began vomiting, her mother took her to see Dr. William Heath, her pediatrician. Dr. Heath found no physical evidence of an injury, but at the request of Livonia referred Hannah to a neurologist for a more complete examination. The examining neurologist, Marianne E. Majkowski, D.O., came to the same conclusion as Dr. Heath, finding no physical evidence of a head injury. Over the next five years, Hannah would visit with Dr. Majkowski and Dr. Heath numerous times, in addition to seeing three other doctors and a neuropsychologist, with the net result of one electroencephalogram (known better as an "EEG") indicating some abnormality in Hannah's brain. Otherwise, no objective test ever confirmed that Hannah suffered from a brain injury as a result of the accident. Based on the sole abnormal EEG, Dr. Charise Valentine, who performed that test, submitted an affidavit stating, in pertinent part:

> 4. That Hannah Shropshire suffered a traumatic brain injury as a result of a motor vehicle accident which occurred on the 15th day of May, 2001.
>
> 5. That Hannah Shropshire manifests seizures attributable to the aforementioned motor vehicle accident and resulting closed head injury.
>
> 6. As a licensed allopathic physician who regularly diagnoses and treats closed head injuries, it is my opinion that the motor vehicle accident aforementioned caused Hannah Shropshire to sustain a closed head injury resulting in a serious neurological injury.

In her deposition, Hannah testified as to what her general life has been like since the accident, and in this testimony she appears normal for a girl her age. She goes swimming, has friends at school, plays computer games and basketball, watches television with her two older sisters, rides her bike, and over the last summer "got to do all the fun stuff" that she wanted. She enjoyed third grade and her classes, but was not eager to return to school. Her mother also testified that Hannah's grades remained good throughout the years following the accident, with the exception of her handwriting grade, but that was apparently "low" before the accident as well.

In the district court, plaintiff sought to introduce Dr. Valentine's affidavit in opposition to defendant's motion for summary judgment. Plaintiff argued there, as she does here, that this affidavit satisfies subsection (2)(a)(ii) of the no-fault scheme and therefore it is now a question for the jury whether, as a result of the accident, she has a "serious impairment of body function." For various reasons that we need not address, the district court found the affidavit inadmissible, and determined that without it plaintiff had not produced evidence sufficient to satisfy subsection (2)(a)(ii). Nor, the court concluded, had plaintiff shown that her injury satisfied the generic definition of "serious impairment of body function" contained in subsection (7). Therefore, the district court granted defendant's motion for summary judgment.

## III.

We review grants of summary judgment de novo, and draw all reasonable inferences in favor of the nonmoving party. *Lockett v. Suardini*, 526 F.3d 866, 872 (6th Cir. 2008) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

In diversity actions, we apply state substantive law but federal procedural law, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), and a central dispute in this appeal concerns this substantive/procedural distinction. Mich. Comp. Laws § 500.3135(2)(a)(ii) apparently requires different things of a plaintiff at this stage of litigation than does Fed. R. Civ. P. 56(c), and this case requires us to determine whether this provision of Michigan law is substantive and therefore applicable in federal court, or procedural, in which case it is supplanted by Rule 56. We conclude that the Michigan provision at issue is procedural, and therefore a plaintiff is not entitled to argue her case to a jury merely because she has satisfied its requirements. Instead, plaintiff must produce evidence creating a genuine issue of material fact, as required by Rule 56(c). Here, plaintiff has failed to do so, and as a result defendant's motion for summary judgment must be granted.

**A.**

As an initial matter, Laidlaw failed to raise this issue in the district court. However, as this court has recognized, we may affirm on a ground not relied upon by the district court. *E.g., Dismas Charities, Inc. v. United States DOJ*, 401 F3d 666, 677 (6th Cir. 2005).

Whether we apply the closed-head injury provision in federal court turns on whether that provision is substantive or procedural. *Erie R.R. Co.*, 304 U.S. at 78. For some time now, it has been clear that a substantive law is one that gives rise to "state-created rights and obligations" or is otherwise "bound up with these rights and obligations in such a way that its application in the federal court is required." *Byrd v. Blue Ridge Rural Elec. Corp.*, 356 U.S. 525, 535 (1958). Viewed with that in mind, the subsection containing the closed-head injury provision states, in its entirety:

> (a) The issues of whether an injured person has suffered serious impairment of body function or permanent serious disfigurement are questions of law for the court if the court finds either of the following:
>
> (i) There is no factual dispute concerning the nature and extent of the person's injuries.
>
> (ii) There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination as to whether the person has suffered a serious impairment of body function or permanent serious disfigurement. However, for a closed-head injury, a question of fact for the jury is created if a licensed allopathic or osteopathic physician who regularly diagnoses or treats closed-head injuries testifies under oath that there may be a serious neurological injury.

Mich. Comp. Laws §§ 500.3135(2)(a)(i) & (ii). It appears from the language of the closed-head injury provision, and, for that matter, subsection (2)(a) as a whole, that its purpose is to allocate decision-making authority between the judge and jury, a quintessentially procedural determination. *See Byrd,* 356 U.S. at 538. This subsection sets forth no substantive standards at all; it merely delineates which decision-making body, judge or jury, should make the substantive determinations laid out elsewhere. Furthermore, because the entire subsection is bereft of substantive law, it cannot be said

to be so bound up in state-created rights and obligations as to require its application in federal court.

The fact that this subsection overlaps with Rule 56, and the judge-jury demarcations set forth therein, is another indication that we should not apply it in federal court. *See Byrd*, 356 U.S. at 538 ("there is a strong federal policy against allowing state rules to disrupt the judge-jury relationship in the federal courts"); *see also Hanna v. Plumer*, 380 U.S. 460, 471-74 (1965) (holding that in diversity cases, federal courts should apply any on-point Federal Rule of Civil Procedure, unless it directly conflicts with state law and violates either the Constitution or the Rules Enabling Act, 28 U.S.C. § 2072). In *Reid v. Sears, Roebuck & Co.*, we wrote that, notwithstanding conflicting state law, "[s]ummary judgment is a procedural device for deciding a case without the necessity of a full-blown trial. When there is a motion for summary judgment in a diversity case, the provisions of Rule 56 control its determination." 790 F.2d 453, 459 (1986) (internal quotations omitted). Especially relevant here is that we have applied this rule even where the federal summary judgment requirements displace state law that would require a jury to make a particular determination. *Bichler v. Union Bank & Trust Co.*, 745 F.2d 1006, 1014 (6th Cir. 1984) (en banc) (holding that Rule 56 applies even when a person's mental state is at issue, a question reserved for the jury under state law).

Despite subsection (2)(a)(ii)'s seemingly straightforward language, plaintiff argues that it creates a new avenue by which she can prevail on the merits, thereby making this law a substantive one that we would then apply in federal court. Her argument, however, is unavailing. We look first, as we must, to the state courts of Michigan for guidance on this question, *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005), but unfortunately, there is little to be found.[3] This is not surprising, since in Michigan state court once subsection (2)(a)(ii) is satisfied, there is nothing left

---

[3]There are numerous Michigan state court decisions that stand for the undisputed proposition that once a plaintiff has satisfied the requirements of the closed-head injury provision, she need not in addition satisfy the requirements of subsection (7) to survive summary disposition. *See, e.g., Nelson v. Vasich*, 2006 WL 2708683 (Mich. App. Sept. 21, 2006); *Guerrero v. Smith*, 2006 WL 2419178 (Mich. App. Aug. 22, 2006). But those cases are limited to determinations regarding summary disposition under the Michigan Court Rules; they do not in any way opine as to what the plaintiff must ultimately prove to the jury to prevail on the merits.

for the court to decide; the case goes straight to the jury.  In the absence of Michigan case law, we must anticipate how the Michigan Supreme Court would rule on the issue, and make our decision accordingly.  *Id.*

Turning, then, to the statute itself, a review of § 500.3135 in its entirety makes clear that there are *only* three circumstances in which a person can recover noneconomic tort damages arising from an automobile accident: "death," "permanent serious disfigurement," or "serious impairment of body function."  Mich. Comp. Laws § 500.3135(1).  And there is *only* one way to meet the "serious impairment" exception, as provided in subsection (7): "[a]s used in this section, 'serious impairment of body function' means an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life."  Mich. Comp. Laws § 500.3135(7).  Nothing in subsection (2)(a)(ii) suggests that these requirements need not be met in order for a plaintiff to recover at trial just because a plaintiff alleges a closed head injury.  In fact, by its very terms, subsection (7)'s definition applies to the entire "section," including subsection (2)(a)(ii).

The jury instructions Michigan courts use in such cases support our conclusion that subsection (2)(a)(ii) does not provide a new means of recovery.  In any case arising under the no-fault statute, courts instruct the jury that:

> One of the elements plaintiff must prove in order to recover noneconomic loss damages in this case is that [he/she] sustained a serious impairment of body function.

> Serious impairment of body function means an objectively manifested impairment of an important body function that affects the plaintiff's general ability to lead [his/her] normal life.

M. Civ. JI 36.11. These instructions are "To Be Used in Cases in Which [Mich. Comp. Laws § 500.3135] Applies," and there is no exception or different instruction to be given for cases that go to a jury under the closed-head injury provision.[4] *Id.* In other words, even when "a question of fact for the jury is created" by way of the closed-head injury provision, juries are still instructed that they may only find for the plaintiff if her injury meets the requirements of subsection (7). No Michigan court has ever held or even hinted to the contrary, and we have no reason to believe that, given the opportunity, they would do so.

We conclude, then, that although subsection (2)(a)(ii) provides an alternate road by which a plaintiff may reach a jury, it does not create an altogether new means of recovery. In Michigan, there is but one route to ultimate recovery for plaintiffs with closed-head injuries arising from an automobile accident, and that is through subsection (1) via the requirements laid out in subsection (7).

Finally, plaintiff took the position at oral argument that the closed-head injury provision is substantive because it is found in a state statute that creates a cause of action. Put another way, plaintiff contends that Rule 56 may only supplant provisions of state law that are found in the state's summary judgment procedures, and in this she is simply mistaken. Whether a state law provision is substantive or procedural depends not on where that law is found, but rather, as stated above, on whether that particular provision either creates rights and obligations or is so "bound up with [state-created] rights and obligations" that it must be considered substantive. *Byrd*, 356 U.S. at 535. It is true that in the usual case, the state law overridden by Rule 56 will be the state's summary judgment rule, but that is happenstance, not a limit on the application of federal summary judgment procedures. *See, e.g., Central Ins. Co. v. Dana Corp*, 1990

---

[4]The "Notes on Use" do not provide any instruction to the contrary. They state only that:

> The amended statute specifically provides that for a closed-head injury, a question of fact is created if a licensed allopathic or osteopathic physician who regularly diagnoses or treat closed-head injuries testifies under oath that there may be a serious neurological injury. MCL 500.3135(2).

M. Civ. J1 36.11. There is no indication anywhere in the instructions that the generic instruction quoted above is not to be given in such cases.

WL 47561 (6th Cir. Apr. 17, 1990) (holding that Rule 56 overrides state case law preventing summary judgment disposition for cases involving claims for piercing the corporate veil).

In drawing the conclusion we reach today, we recognize that because Rule 56 and section (2)(a)(ii) set forth different standards for plaintiffs at this stage of litigation,[5] it is inevitable that our decision to apply the federal rule over the state statute will, on occasion, lead to different outcomes. But this is no barrier to the application of the federal standard, given the "strong federal policy" of not permitting state law to interfere with the "judge-jury relationship in the federal courts." *Byrd*, 356 U.S. at 538; *accord Reid*, 790 F.2d at 459. Moreover, this difference in outcome should be exceedingly rare. The evidence we require of a plaintiff to survive summary judgment is by definition some lesser quantum of the same evidence she would eventually have to produce if she were to prevail at trial. If she cannot produce the minimal evidence required to survive summary judgment, there is no reason to think she would have prevailed at trial. Therefore, we are not overly concerned that our decision today will lead to different outcomes in federal as opposed to state court.

**B.**

Having determined that defendant's motion for summary judgment is governed by Rule 56, we are left with the task of applying that rule to the case at bar. Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Upon a defendant's motion for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence

---

[5]As plaintiff points out, in Michigan it is settled law that a plaintiff who has produced evidence satisfying this provision is entitled to argue her case to a jury; she need not adduce any other evidence to avoid summary disposition. *See, e.g., McCall v. Dorch*, 2007 2007 WL 171987 (Mich. App. Jan. 23, 2007). Laidlaw agrees, and concedes that if Dr. Valentine's affidavit is admissible, then defendant's motion for summary disposition would be denied in the Michigan courts. Federal law, on the other hand, requires a court to adjudge motions for summary judgment based on the familiar standard of whether there exists a genuine issue of material fact. Fed. R. Civ. P. 56(c).

on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). We must, therefore, determine whether plaintiff has created a genuine issue of material fact on the essential elements of her case.[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

According to the Michigan Supreme Court, "'serious impairment of body function' contains the following components: an objectively manifested impairment, of an important body function, and that affects the person's general ability to lead his or her normal life."[7] *Kreiner v. Fischer,* 683 N.W.2d 611, 619 (Mich. 2004) (footnote omitted). Because we conclude plaintiff has not satisfied the last element, we need not address the first two.

The *Kreiner* court explained in great detail how courts should determine whether an injury affects a person's general ability to lead her life, beginning by noting that:

> [W]hat is "normal" is to be determined subjectively on the basis of the plaintiff's own life and not the life of some objective third party. However, once that is fixed as the base, it is to be objectively determined whether the impairment in fact affects the plaintiff's "general ability to lead" that life.

*Id.* at 619 n.7. The court further clarified the analysis to be undertaken:

> The starting point in analyzing whether an impairment affects a person's "general," i.e., overall, ability to lead his normal life should be identifying how his life has been affected, by how much, and for how long. Specific activities should be examined with an understanding that not all activities have the same significance in a person's overall life. Also, minor changes in how a person performs a specific activity may not change the fact that the person may still "generally" be able to perform that activity.

---

[6]We assume without deciding that Dr. Valentine's affidavit is admissible evidence, and as such, it will be treated like all other evidence submitted at this stage of litigation. However, because Dr. Valentine does not opine on any of the ultimate factual issues of the case, it is irrelevant to our inquiry.

[7]We note that the *Kreiner* court set forth this analysis to guide courts when applying the other two provisions of subsection (2)(a), that is, to courts determining as a matter of law whether an injury rose to the level of being a serious impairment of bodily function, under subsection (2)(a)(i) or the first sentence of subsection (2)(a)(ii). 683 N.W.2d at 625. However, we see no reason why its logic would not apply here, because *Kreiner* expands and interprets subsection (7), the requirements of which plaintiff must meet to prevail, as discussed above.

*Id.* at 625. In general, courts should make this determination based on the totality of the circumstances.[8] *Id.* at 626.

Hannah's youth at the time of the accident – she was five years old and had just finished kindergarten – makes it difficult to apply *Kreiner* to her case.[9] Nonetheless, we begin by noting those things which have *not* been affected by Hannah's alleged injury: Hannah has, by her mother's account, missed only two weeks of school due to this accident, largely for visits to the doctor, so her injury cannot be said to have affected her ability to attend school. Nor has her injury, or the alleged seizures that come along with it, affected her ability to participate in activities or interact with other students and friends – she enjoys doing many things typical for a girl her age, such as playing basketball, riding her bike, and playing with her best friend (who has been so since the first grade).

This leaves plaintiff with the argument that her general ability to lead her normal life has been affected through the accident's effect on her academic performance. This is a significant activity in a young person's life, the importance of which we do not doubt. Defendant Laidlaw points out that Hannah has never been held back a grade in school, nor has she ever needed or received the assistance of a tutor, or a special teacher of any kind to help her with her school work. To be sure, there is more to academic performance than that – just because a student does not fail or need a tutor does not mean that her ability to perform academically has not been affected substantially enough to change her ability to lead her normal life. But Hannah's mother had an opportunity to explain exactly how the injury has affected her daughter's academic performance, and her explanation was, in our view, less than compelling. When asked if Hannah had experienced any problems at school during first grade, the year after the accident, the only problem she brought up was with her handwriting. She maintained this even when

---

[8]A non-exclusive list of factors to be considered include "(a) the nature and extent of the impairment, (b) the type and length of treatment required, (c) the duration of the impairment, (d) the extent of any residual impairment, and (e) the prognosis for eventual recovery." *Id.* at 626.

[9]Adding to this difficulty is the fact that plaintiff has not at any point even attempted to identify any evidence suggesting that she can ultimately prevail, instead hanging her hat on her argument that she need not satisfy the requirements of Rule 56 to survive summary judgment.

pressed as to whether there was "anything else besides her handwriting" that was giving Hannah problems, and she eventually stated that otherwise, Hannah's grades were good. What's more, when putting Hannah's low first-grade handwriting grade in perspective, she went on to testify that Hannah had also received a low handwriting score in kindergarten. This is the only evidence we have on this issue, and it is insufficient to create a genuine issue of material fact.

## IV.

For these reasons we **affirm** the judgment of the district court.