NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0344n.06

No. 12-1594

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Apr 05, 2013*

DEBORAH S. HUNT, Clerk

ROSEMARY MARSH,

    Plaintiff-Appellant,

v.

ASSOCIATED ESTATES REALTY CORP.; AERC
OF MICHIGAN, LCC; AERC OAKS HAMPTON,
LLC; and AERC OAKS, INC.,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)

On Appeal from the United States
District Court for the Eastern
District of Michigan

Before: BOGGS, GIBBONS, and COOK, Circuit Judges.

BOGGS, Circuit Judge. Plaintiff-appellant Rosemary Marsh appeals the district court's order

granting summary judgment in favor of defendant-appellee Associated Estates Realty Corp. (AERC)

of Michigan, as well as three other AERC corporate entities. Marsh sued in the district court after

AERC of Michigan fired her, alleging violations of the Age Discrimination in Employment Act

(ADEA), 29 U.S.C. § 623, and Michigan's Elliot-Larsen Civil Rights Act (ELCRA), Mich. Comp.

Laws § 37.2202. For the reasons that follow, we affirm the district court's order.

**I**

Below is a clear and thorough statement of the facts as provided in the district court's Order

Granting Defendants' Motion for Summary Judgment. No party disputes the following rendition of

the events giving rise to this case:

Marsh was hired as a leasing consultant by AERC of Michigan in March 2004. She was interviewed and hired by Pam Carson, a property manager who also served as her supervisor. Approximately one year later, she voluntarily left her position to pursue employment opportunities elsewhere. All of the parties agree that she left the Company on good terms and that Carson told her that she "could always come back" to AERC of Michigan. After Carson contacted Marsh and asked if she would like to return, she resumed her position with AERC of Michigan in May 2005. However, Marsh's tenure of employment was shortened when her employment was involuntarily terminated in December of 2007. Marsh was sixty years old when she was initially hired, sixty-one years old when she was rehired, and sixty-three years old when she was terminated.

During her tenure at AERC of Michigan, Marsh primarily worked as a leasing consultant at The Oaks at Hampton, where her primary job responsibility was to facilitate the rental of the apartments (i.e., showing apartments to prospective tenants, obtaining leases, marketing and promotion, and assisting residents). The evidence reflects—and the Defendants do not contest—that she was effective in this position when performance is measured in terms of the number of apartments leased.

However, AERC of Michigan also uses additional metrics to evaluate the performance of its employees, such as the use of a third-party contractor who conducts anonymous telephone and video evaluations of a leasing consultants' sales techniques and customer communication skills. The contractor scores these so-called "phone shops" and "video shops" on a one-hundred-point scale, which is broken down into numerous sub-components. Leasing consultants are expected to achieve a score of at least ninety (90) on the "telephone shops" and at least eighty (80) on the "video shops." This expectation is conveyed to the employees in an "Audio and Video Recording Acknowledgment" form, which advises them that (1) they may be recorded and evaluated, and (2) these evaluations "may be used for rewarding good performance, coaching for improved performance, and for disciplinary purposes, up to and including termination of employment." Despite acknowledging that she received and signed this form, Marsh insists that she had been repeatedly assured that these "shops" would be used only to assist the employees in improving their job performances and not for such disciplinary measures as demotion or discharge.

Marsh's scores on these evaluations were considerably lower than expectations. Over the course of her employment, she received scores of forty-one and fifty-six on the "video shops," and eighty-two, forty-five, FN2 forty-one, fifty-seven, thirty-five, eighty-three, eighty, one hundred, fifty, and seventy-six on the "phone shops." Thus, out of twelve total evaluations, she met expectations only once. In a "video shop" in February 2006, Marsh failed to obtain the identification of an (acting) prospective

tenant prior to providing a tour of the apartment. This failure runs counter to AERC of Michigan's personal safety policy, which provides that government-issued identification must be obtained from each individual of legal age prior to embarking upon a tour of the facilities. The policy also states that "[e]veryone must be treated in a fair, equal manner; therefore, consistency when administering this policy is essential." On March 16, 2007, Carson and Diane Shimoura (another property manager) sent Marsh a memorandum which indicated that (1) all three of her "phone shop" evaluations (eighty-two, forty-five (disregarded), and forty-one) during the preceding six-month period were unacceptable, and (2) her scores must significantly improve. Several days later (March 20th), she received a "phone shop" score of fifty-seven. During the following week (April 2nd), she received another memorandum advising her that she was required to take several immediate steps to improve her scores. On April 17th, Shimoura sent her a written warning which specified that "future phone shops need to be within acceptable range." Marsh was also advised that, if she failed satisfy this requirement, "additional corrective action, up to and including termination[,] will occur." She subsequently received three unacceptable scores (eighty-three, eighty, and fifty)—in addition to her one acceptable score of one hundred—in the next five months.

FN2  This score came around the same time that Marsh had received a diagnosis of kidney cancer and was disregarded by her employer.

Employees of AERC of Michigan are also evaluated through annual performance reviews. In January 2005, Marsh was given an overall score of two out of four ("Meets basic expectations; requires improvement in some areas."), with sub-scores of two in several areas (communication, creativity, customer satisfaction, initiative, and job knowledge) and three in others (dependability, planning and organization, and teamwork). Later that year, she was issued an employee reprimand in which several areas for improvement were highlighted. In 2006, her overall performance review score was three out of four ("Generally satisfies expectations and recognizes areas for improvement."), based on sub-scores of two in several areas (communication, creativity, job knowledge, and planning and organizing), three in others (customer satisfaction, initiative, and teamwork), and a four in one (dependability). Her 2007 review showed improvement, with an overall score of three and only one sub-score of two (creativity).

In October 2007, AERC of Michigan employed Amy Horn to serve as its property manager at The Oaks at Hampton, and Carson was promoted to a position in which she no longer had day-to[-]day responsibilities at that location. In November 2007, Marsh received a "video shop" score of fifty-six and, once again, failed to obtain the requisite identification prior to providing a prospective tenant with a tour through the

facilities. According to the affidavits that were submitted by AERC of Michigan, Miria Rabideau (regional vice president of AERC of Michigan) contacted Carol Screngi (human resources generalist for AERC) to express her concerns about Marsh's work performance, such as her low "phone shop" scores and her violations of the Company's identification policy.

After reviewing Marsh's performance documents, Screngi recommended that Rabideau and Carson place Marsh on final probation and provide her a "Performance Development and Improvement Form" ("PDIF"). She also advised them to schedule additional "phone shops" and "video shops" for Marsh during the month of March so that her compliance with the PDIF could be assessed. After Rabideau approved this course of action, Carson relayed this recommendation to Horn, who, on November 29, 2007, met with Marsh to present her the PDIF.

The PDIF (1) indicated that Marsh was being placed on final probation, (2) identified several areas in which her performance had not met Company standards, and (3) required her to, among other things, always obtain the identification of every prospective tenant prior to every tour and attain a score at least ninety (90) on all future "video shops" and "phone shops." This form also indicated that her failure to achieve these objectives would result in "additional action, up to and including termination."

On December 5th, Marsh received a phone shop score of seventy-six, which was reported by Horn to Carson. On December 6th, Cornelius Young (a leasing manager with AERC of Michigan) notified Horn via e-mail that Marsh had (1) violated a company policy against holding apartment units without receiving deposits in advance, and (2) shown particular apartment units to tenants, contrary to an instruction that they not be shown. On December 10th, Horn forwarded this e-mail to Carson and inquired as to her "thoughts on moving forward." Carson recommended that Marsh's employment be terminated—a decision that was approved by Rabideau and Screngi.

On December 12th, Horn met with Marsh to advise her of her termination. Marsh contends that Horn stated during this meeting, "I think you're getting too old for your job because of that phone shop" or "I think you're just getting a little too old for your job." Marsh also alleges that Horn directed several derogatory age-related comments toward her during the two months of her supervision. Specifically, she states that Horn (1) called her "Old Rose" on "a couple" of occasions, (2) had ma[d]e statements to the effect of "you're slipping, you're getting old" when anybody forgot something, and (3) inquired on one occasion when Marsh had to put paper in the bottom drawer of the photocopier if she was "too old to get down there."

> On December 29, 2007, Marsh completed an intake questionnaire with the Equal Employment [Opportunity] Commission ("EEOC"), and on January 2, 2008, she filed a discrimination charge. On June 3, 2010, the EEOC issued its finding of reasonable cause to believe that she had been discharged in violation of the ADEA. When efforts at settlement failed, the EEOC issued a "right-to-sue" letter on July 15th. Marsh timely filed this lawsuit on October 13th.

Dist. Ct. Op. at 1–6 (internal citations omitted).

After discovery, AERC of Michigan moved for summary judgment. In addition, the three other AERC corporate entities moved to dismiss themselves from the litigation, arguing that they were not Marsh's employer and could not be held liable under the "single employer" doctrine. The district court, after explaining the law used to analyze ADEA and ELCRA claims, found that: (1) Marsh had not presented any direct evidence of age discrimination; and (2) Marsh also could not present sufficient circumstantial evidence of age discrimination under the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Accordingly, the court declined to address the motion to dismiss and instead granted summary judgment for all defendants.

With regard to Marsh's purported direct evidence of age discrimination—four statements allegedly made by Horn—the district court held that these statements did not demonstrate that Marsh's termination occurred because of age. The district court held that three of the statements had no causal connection to AERC of Michigan's decision to fire Marsh, but rather were made in contexts totally distinct from Marsh's termination. The district court noted that at most, these alleged statements permitted the *inference* that Marsh's termination was due to age discrimination, and thus did not constitute direct evidence. In addition, while Marsh insisted that Horn's fourth alleged comment—that Marsh was getting too old for her job—was made at the time Horn informed

Marsh of her termination, the district court found that this was not direct evidence that Marsh was fired because of her age, as Horn was not the decision-maker with respect to firing decisions.

Moving to Marsh's circumstantial evidence of age discrimination, the district court found that Marsh had established a prima facie case under *McDonnell Douglas*. Nonetheless, it held that AERC of Michigan had presented legitimate, nondiscriminatory reasons for firing Marsh—that she had repeatedly received unacceptable performance-testing (phone-shop and video-shop) scores and had violated several company policies. The district court held that Marsh could not raise a genuine issue of material fact that these reasons were pretextual and ruled that Marsh could not meet her evidentiary burden under the *McDonnell Douglas* framework.

Given that Marsh failed to provide direct or circumstantial evidence that the legitimate proffered reason was pretext for age discrimination by AERC of Michigan, the district court granted AERC of Michigan's motion for summary judgment. In addition, the court, rather than considering the motion to dismiss submitted by the other three AERC corporate entities, simply granted summary judgment for them as well.

**II**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This court reviews the grant of a motion for summary judgment de novo. *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011). We must construe all evidence and draw all inferences against the moving party. *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009). However, "'[t]he mere existence of a scintilla of evidence in support of [the non-moving

party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party].'" *Shropshire v. Laidlaw Transit, Inc.*, 550 F.3d 570, 576 (6th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). In this analysis, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### III

### A

The ADEA prohibits an employer from taking an adverse employment action against an employee because of that employee's age. *See* 29 U.S.C. § 623(a). Age discrimination claims made under the ELCRA are assessed using the same analytical framework as those made under the ADEA. *Bondurant v. Air Line Pilots Ass'n, Int'l*, 679 F.3d 386, 394 (6th Cir. 2012). A plaintiff may establish a violation of the ADEA by presenting either direct or circumstantial evidence. *See Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011). As the district court correctly noted, for evidence to qualify as direct, a factfinder must not need to "'draw any inferences in order to conclude that the challenged employment action'" violated the ADEA. Dist. Ct. Op. at 8 (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003)). If inferences are required, the evidence is properly classified as circumstantial, and the plaintiff must satisfy the additional demands of the *McDonnell Douglas* framework.

### 1

Here, the district court did not state the current standard when describing what the proffered evidence must demonstrate in order to establish a violation under the ADEA or the ELCRA. The

district court stated that a plaintiff must provide evidence, "which, 'if believed, requires the conclusion that unlawful discrimination was at least *a motivating factor* in the employer's actions.'" *Ibid.* (emphasis added) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)). However, ten years after *Jacklyn*, the Supreme Court clarified that the motivating-factor standard, applicable in Title VII cases, was not appropriate in the context of the ADEA. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009). Instead, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was *the 'but-for' cause* of the challenged employer decision." *Id*. at 177–78 (emphasis added); *see also Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009) ("*Gross* enunciated the correct standard for ADEA claims as whether the plaintiff has proven 'by a preponderance of the evidence . . . that age was the "but-for" cause of the challenged employer decision.'" (quoting *Gross*, 557 U.S. at 177–78)). Thus, the plaintiff must provide facts that, if believed, would allow the factfinder to conclude that age was the but-for cause of the challenged adverse employment action.

**2**

If a plaintiff relies on circumstantial, rather than direct, evidence, she may take advantage of the burden-shifting framework of *McDonnell Douglas*, imported from Title VII cases. *Yeschick v. Mineta*, 675 F.3d 622, 632 (6th Cir. 2012). Under this framework, a plaintiff may establish a prima facie case of age discrimination by showing: "(1) [s]he was at least 40 years old at the time of the alleged discrimination, (2) [s]he was subjected to an adverse employment action, (3) [s]he was otherwise qualified for the position, and (4) [s]he was rejected and someone outside the protected class was selected." *Harris v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 594 F.3d 476,

485 (6th Cir. 2010). If the plaintiff makes this showing, "the burden of production [then] shifts to the defendant to articulate a nondiscriminatory reason for its action." *Ibid*. If the defendant meets this burden, "the burden of production shifts back to the plaintiff to show that the [defendant's] proffered reason was mere pretext for intentional age discrimination." *Ibid*.

**B**

On appeal, Marsh does not appear to press the argument that Horn's alleged statements constitute direct evidence of an ADEA violation. Rather, Marsh mentions Horn's statements while attempting to establish pretext during the final phases of the *McDonnell Douglas* analysis. *See* Appellant Br. at 20–21. Even so, we agree with the district court that Horn's four alleged statements did not constitute direct evidence of age discrimination.

Marsh alleged that Horn: (1) called her "Old Rose" several times prior to her termination; (2) made statements to the effect of "you're slipping, you're getting old" when other co-workers were forgetful; (3) once asked Marsh if she was "too old to get down there" when she bent down to replace paper in the photocopier; and (4) at the time of Marsh's firing, said, "I think you're getting too old for your job because of that phone shop" or "I think you're just getting a little too old for your job." As the district court noted, the first three alleged statements were not made in connection with a decision to fire Marsh. At the most, these statements show only that Horn felt that Marsh was an elderly individual and that some stage of old age was correlated with a decrease in job performance. To hold that age was the but-for cause of Marsh's termination, a factfinder would still have to infer from these statements that Horn's supposed disdain for the elderly led her to fire Marsh. Thus, these statements do not constitute direct evidence of age discrimination. *See Geiger*, 579 F.3d at 621

(holding that statements "unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden . . . of demonstrating animus" (alteration in original) (internal quotation marks omitted)).

In addition, all four alleged statements were made by an individual who was not a decision-maker with respect to the firing of AERC employees. Thus, even though Horn's fourth statement was supposedly made during the decisional process, i.e., at the time of Marsh's firing, that statement, as well as the other three, cannot constitute direct evidence that AERC of Michigan engaged in age discrimination when it terminated Marsh. *See Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 550 (6th Cir. 2004) (holding that when an individual is not "a decision-maker in connection with the discharges[,] . . . whatever statements he made are irrelevant" and thus "will not constitute direct evidence"); *see also Geiger*, 579 F.3d at 620–21 (noting that "[a]ny discriminatory statements must come from decisionmakers to constitute evidence of discrimination").[1]

Marsh contests the fact that Horn was not a decision-maker and argues that "[t]he lower Court weighed the evidence and essentially made a fact-finding when it determined that Amy Horn was not the decision maker." Appellant Br. at 10. While it is true that, on a motion for summary judgment, we take all facts in the light most favorable to the non-moving party, Marsh has not

---

[1] Although the district court mistakenly used the motivating-factor language rather than the but-for language when outlining what a plaintiff must demonstrate to prove a violation of the ADEA, *see supra* subsection III.A.1, this error had no effect on the district court's ultimate analysis. Because the district court found that the statements at issue did not constitute direct evidence, both because most of them were unrelated to Marsh's termination and all of them were made by a non-decision-maker, it never evaluated whether these statements established that age was the but-for cause of Marsh's discharge.

produced *any* concrete evidence that Horn was indeed a decision-maker. There is nothing in the record that indicates that Horn had any input in the decision to fire Marsh. The only citations Marsh provides to support her claim that Horn was a decision-maker are the answers of defendants to EEOC interrogatories and her own deposition testimony.

In the interrogatory answers, AERC nowhere specifically indicated that Horn had the authority to make firing decisions, but rather listed Horn as one of four individuals who "recommended Claimant's discipline, demotion, and/or discharge." This statement does not indicate that Horn had any decision-making power (as opposed to being one of several recommenders) and is completely consistent with AERC's assertion that Horn merely passed along independently generated reports of Marsh's inadequate performance and that individuals higher up the chain of command, including Rabideau, Carson, and Screngi, made the ultimate decision to fire Marsh, as recited *supra* at p. 4. In fact, immediately after the interrogatory answer that Marsh cites, AERC submitted another answer indicating that Rabideau was the only individual "who made the final decision to discipline, demote, and/or discharge Claimant," further supporting AERC's position that Horn was not a decision-maker.

With respect to Marsh's deposition, in response to a question about who made the decision to terminate her, Marsh simply states: "I have no idea. I thought it was coming from Amy [Horn] because she says, I've decided to terminate you as of today, right now." At the most, this statement indicates that Marsh did not affirmatively know who made the decision to fire her but felt that Horn could possibly have been the decision-maker given comments that Horn allegedly made at the time of Marsh's firing. AERC of Michigan, however, has submitted depositions from both Carson and

Rabideau indicating that Carson recommended Marsh's termination and that Rabideau was the one who ultimately approved this decision. In the face of this evidence, Marsh's unfounded speculation, supported by no concrete proof, does not raise a genuine dispute of material fact.

As we have frequently stated, "'[t]he mere existence of a scintilla of evidence in support of [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party].'" *Shropshire*, 550 F.3d at 576 (quoting *Anderson*, 477 U.S. at 252). Marsh has failed to cite any evidence in the record that would allow a jury to reasonably find that Horn made—or even had the power to make—a decision to terminate her employment, while AERC has provided documentation indicating that Carson recommended the termination decision and that it was approved by Rabideau. Thus, the district court properly disregarded Marsh's unsupported claim to the contrary and found that Horn's statements did not constitute direct evidence that AERC of Michigan engaged in age discrimination.

## C

The district court also properly held that Marsh failed to satisfy the requirements of the *McDonnell Douglas* framework and thus could not establish circumstantial evidence of age discrimination. The court first held that Marsh had established a prima facie case because she was over 40 and thus within the protected class, she had been terminated, she was qualified for her position, and she was replaced by a substantially younger individual, Marla Stuckey, age 26.

Assuming without deciding that Marsh established a prima facie case under *McDonnell Douglas*, we hold that AERC of Michigan presented a legitimate, nondiscriminatory reason for Marsh's termination and that Marsh did not successfully rebut that reason by demonstrating that it

was pretextual. AERC of Michigan claims that it discharged Marsh as a result of her unacceptably low phone- and video-shop scores and her several violations of company policies. Appellee Br. at 37–38. Marsh does not contest her actual phone- and video-shop scores and concedes that these scores were lower than those required by AERC and that they were compiled not by Horn, but by independent third-party investigators, who Marsh admits expressed no discriminatory animus towards her. Nor does Marsh dispute that she violated company policy during two different video-shops—again, conducted by independent third parties—when she failed to obtain a prospective tenant's identification prior to providing a tour of the apartment facilities. Marsh does contest the other alleged violations of company policy that were reported in an email by Young, i.e., that she held apartment units without receiving advance deposits and that she showed certain apartment units to tenants contrary to an instruction that they not be shown. Regardless of whether Young's report was true, however, Marsh has presented no evidence that those involved in her firing did not reasonably believe it to be true. Thus, under this circuit's "honest belief" rule, "as long as [AERC of Michigan had] an honest belief in its proffered nondiscriminatory reason . . . , the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001).

Moving to the bulk of Marsh's pretext argument, Marsh insists that a number of other employees received phone- and video-shop scores below AERC of Michigan's target levels (90 for phone-shops and 80 for video-shops) and thus that these targets were unenforced standards used to conceal discrimination. As the district court astutely noted, however, all the employees to whom Marsh refers, while having received a few scores below the prescribed targets, either also received

- 13 -

a number of high passing scores or, while scoring below the targets, still scored well above Marsh in absolute terms. Marsh cites no employee who consistently received scores in the forties and fifties or who was tested twelve times and passed only once. Additionally, Marsh can point to no employee retained by AERC of Michigan after engaging in the violations of company policy ascribed to her.[2] In sum, Marsh can point to no other employee who was not fired after so consistently and grossly falling short AERC of Michigan's testing requirements or so frequently violating company policy. Thus, she cannot establish pretext by citing the retention of other employees.

Finally, Marsh asserts that Horn's alleged age-related statements, discussed above, demonstrate that AERC of Michigan's proposed reasons for her termination are a mere pretext used to mask age discrimination. As discussed *supra* in Section III.B, however, Marsh cannot demonstrate that these alleged comments were made by a decision-maker or that the individuals with the power to fire her harbored any discriminatory animus. Thus, the alleged statements of an individual with no authority to fire Marsh cannot demonstrate that AERC of Michigan considered Marsh's age when firing her, much less that AERC of Michigan's espoused reasons were pretextual and that age was actually the but-for cause of Marsh's termination, as required by *Gross*.

---

[2] Marsh also tangentially argues that any consideration of the phone- and video-shop scores was error because they constitute hearsay. However, these reports were not introduced to prove the truth of the matters asserted therein, but rather to demonstrate the state of mind of AERC of Michigan's decision-makers when they fired Marsh, and thus they do not constitute hearsay. *See Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598 (6th Cir. 2007).

**D**

Finally, because Marsh could not establish a prima facie case of age discrimination under the ADEA, the district court correctly held that she also could not establish a violation of the ELCRA and properly granted summary judgment to defendants on Marsh's state-law claim. *See Geiger*, 579 F.3d at 626 ("Because [plaintiff] has failed to present evidence sufficient to establish the elements of an ADEA claim, he has similarly failed to establish a *prima facie* case under the ELCRA."). In addition, given that Marsh could not demonstrate that AERC of Michigan violated the ADEA, it was appropriate for the district court to grant summary judgment for the other three AERC corporate entities as well rather than engaging in an analysis of whether they qualified as Marsh's employer.

**IV**

For the foregoing reasons, we AFFIRM the district court's order granting summary judgment to all defendants.